UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RUDOLPH ST. GERMAIN individually,**                           **CIVIL ACTION**
**and on behalf of others similarly situated**

**versus**                                                                            **No. 07-3563**

**SCOTTSDALE INSURANCE COMPANY**                      **SECTION: "I"/1**

<u>**ORDER AND REASONS**</u>

Before the Court is Scottsdale Insurance Company's ("Scottsdale") motion to dismiss plaintiff's supplemental and amended complaint and motion to strike class allegations.[1] For the following reasons, Scottsdale's motions are **DENIED**.

*Background*

Prior to Hurricanes Katrina and Rita, plaintiff, Rudolph St. Germain ("St. Germain"), insured a commercial apartment building through Scottsdale.[2] As a result of the hurricanes, St. Germain's apartment building sustained damages that were allegedly covered by the insurance policy issued to him by Scottsdale (the "insurance contract").[3]

Subsequent to St. Germain filing a claim under the policy, Scottsdale paid St. Germain for the compensable loss to the apartment building which included ten percent (10%) for contractor

---

[1] Scottsdale's motions are filed pursuant to Rules 12(b)(6), 12(f), and 23(d)(4) of the Federal Rules of Civil Procedure and Rule 23 of the Uniform Local Rules of the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana. Rec. Doc. No. 21.

[2] Rec. Doc. No 3-2, p. 2.

[3] Rec. Doc. No. 1, pp. 1-2, para. 3.

overhead and ten percent for contractor profit (10%).[4]  On July 2, 2007, St. Germain filed a lawsuit in this Court against Scottsdale alleging that the amounts paid by Scottsdale for contractor overhead and profit were "unreasonably low" and effected a breach of the insurance contract.[5]

On September 4, 2007, Scottsdale filed a motion to dismiss St. Germain's complaint for failure to state a cause of action for breach of the insurance contract.[6]  On October 12, 2007, the Court denied Scottsdale's motion to dismiss on the condition that St. Germain file an amended complaint properly stating a cause of action.[7]  In compliance with the Court's order, St. Germain filed his first supplemental and amended complaint on October 22, 2007.[8]

On November 7, 2007, Scottsdale filed a motion to dismiss St. Germain's first supplemental and amended complaint and a motion to

---

[4]Rec. Doc. No. 1, p. 2, para. 4.

[5]Rec. Doc. No. 1.

[6]Rec. Doc. No. 3.  Scottsdale filed a motion to dismiss St. Germain's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*.  Scottsdale argued that St. Germain failed to plead a breach of contract claim and also failed to state any claim that would otherwise entitle St. Germain to relief.  *Id*.

[7]Rec. Doc. No. 14.

[8]Rec. Doc. No. 17.  While St. Germain has not labeled his amended complaint as a "class complaint," the Court notes that all allegations made by St. Germain are styled as class allegations and are made on behalf of St. Germain and all putative class members.  The Court will only reference St. Germain when reviewing the allegations contained in St. Germain's amended complaint.  *Id.*
    The Court further notes that counsel for plaintiff informed the Court that plaintiff's only claim against Scottsdale is for breach of the insurance contract at issue.  Rec. Doc. No. 33.

strike class allegations.[9]  Scottsdale argues that, despite being afforded the opportunity to amend his complaint, St. Germain has again failed to state a cause of action against Scottsdale for breach of the insurance contract.[10]  In the alternative, Scottsdale argues that, should the Court deny Scottsdale's motion to dismiss, St. Germain's class allegations should be stricken from St. Germain's amended complaint.[11]

### *Law and Analysis*

### I. *12(b)(6) Standard*

Pursuant to Rule 12(b)(6), a district court cannot dismiss a complaint for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  The court will not look beyond the factual allegations in the complaint to determine whether relief should be granted.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In assessing a claim, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual

---

[9] Rec. Doc. No. 21.

[10] Rec. Doc. No. 21-2, p. 8.

[11] *Id.*

-3-

allegations in the light most favorable to the plaintiff.  *See Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  "However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.'"  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).

The "complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A plaintiff "is merely required to provide, in his complaint, a 'short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'"  *Lewis v. Fed. Reserve Bank of Atlanta-New Orleans Branch,* 2004 WL 2035006, at *3 (E.D. La. Sept. 10, 2004) (quoting *Conley,* 355 U.S. at 47, 78 S. Ct. at 103).  A complaint must allege sufficient facts for an inference to be drawn that the elements of the claim exist.  *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990).

Should a plaintiff fail to sufficiently plead its complaint, the Federal Rules of Civil Procedure evince a bias in favor of granting leave to amend.  *Carroll v. Fort James Corp.*, 470 F.3d

1171, 1175 (5th Cir. 2006).  "Generally, when a court dismisses a complaint under Rule 12, the court should allow the plaintiff leave to amend his complaint."  *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F. 2d 1254, 1256 (5th Cir. 1986).

### II. *Pleading Breach of Contract*

In *Louque v. Allstate Insurance Company*, the plaintiff filed a lawsuit in state court against her insurer alleging that the insurer maintained a policy of refusing to settle certain claims covered under the insurance policy issued to the plaintiff.  314 F.3d 776, 778 (5th Cir. 2002).  The plaintiff alleged that the policy of refusing to settle the covered claims effected a breach of the insurance contract and entitled plaintiff to recover damages.  *Id.*

After removing the case to federal court, the insurer filed a motion to dismiss, which the district court granted, for failure to state a claim for breach of an insurance contract.  *Id*.  The U.S. Fifth Circuit Court of Appeals affirmed the district court's grant of the insurer's motion and adopted the district court's interpretation of Louisiana law which provided that, "[t]o state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a *specific policy provision*."  *Id.* at 782 (emphasis added).[12]

---

[12] Finding that Louisiana law requires a citation to a specific insurance provision when claiming breach of an insurance contract, the district court in *Louque* cited the Louisiana Fourth Circuit Court of Appeals' decision in *Bergeron v. Pan Am. Assurance Co.*, 731 So.2d 1037, 1045 (La. App. 4 Cir.

In *Nguyen v. St. Paul Travelers Insurance Company* (consolidated proceedings), plaintiff, Billy Melancon ("Melancon"), alleged that his property was damaged during Hurricane Katrina and that, pursuant to his insurance policy with State Farm Fire and Casualty Insurance Company ("State Farm"), Melancon was owed the value of his lost or damaged property.  2007 WL 3275133, at *2 (E.D. La. Nov. 5, 2007).  Melacon alleged that his insurance policy provided for payment of the cost to repair or replace his property with similar construction or the actual cash value of the damaged property.  *Id.*  Melancon also alleged that State Farm determined that he was entitled to payment based on actual cash value of his property and that, as a part of State Farm's determination of actual cash value, State Farm concluded that Melancon was entitled to contractor overhead and profit at 20% of the total costs of repairing or replacing the property.  *Id.*  Melancon claimed that State Farm's payment of 10% overhead and 10% profit was not a full payment of the overhead and profit and constituted a breach of State Farm's contractual obligation to pay actual cash value for the damaged or destroyed insured property.  *Id.*

Based on these allegations, United States District Judge Sarah S. Vance held that Melancon stated a claim for breach of contract.

---

1999).  The Fifth Circuit adopted the district court's interpretation of *Bergeron* when affirming the grant of the insurer's motion to dismiss. Notwithstanding the decision in *Stokes v. Allstate Indemnity Co.*, 2007 WL 1875847, at *2 (E.D. La. June 28, 2007), this Court is compelled to follow the Fifth Circuit's interpretation of Louisiana law.  *Louque*, 314 F. 3d at 778.

*Id.* at *3. Judge Vance explained that Melancon's claim was, in essence, "that he was entitled, under the loss provision of the policy, to receive actual cash value of his damaged property and that when defendant settled with him on an actual cash value basis, it did not pay him the full amount due because defendant underpaid overhead and profit." *Id.*

Although State Farm argued that Melancon's complaint was deficient for failing to allege a breach of a specific policy provision as required by *Louque*, Judge Vance refuted State Farm's argument by explaining that Melancon based his claims on the loss settlement provision of the insurance contract, which provision was specifically referenced in Melancon's complaint and provided for "the cost to repair or replace with similar construction" or "the actual cash value for the damaged part of the property." *Id.*

Similar to Melancon, St. Germain alleges that his insured property was damaged by Hurricanes Katrina and/or Rita and that pursuant to St. Germain's insurance contract with Scottsdale, Scottsdale was obligated to ascertain the amount of loss suffered by St. Germain and fairly compensate him for the damage caused by the hurricanes.[13] St. Germain further alleges that he is entitled to have Scottsdale pay the value of lost or damaged property

---

[13] Rec. Doc. No. 17, p. 2, paras. 3-6. St. Germain alleges that Scottsdale breached its obligation to fairly ascertain the amount of the loss suffered by St. Germain and each member of the putative class, and subsequently failed to fairly compensate St. Germain and each putative class member for that loss. *Id.* para. 7.

pursuant to the "Loss Payment" provision[14] of the insurance contract.[15] St. Germain claims that the "full value" of damaged or destroyed property includes the "full value" of reasonable general contractor overhead and profit.[16] Based on Scottsdale's alleged failure to pay the "full amount" of contractor overhead and profit, St. Germain argues that Scottsdale breached the insurance contract by failing to pay the full value of the lost or damaged property as required by the "Loss Payment" provision of the contract.[17]

Plaintiff's allegations sufficiently state a cause of action against Scottsdale for breach of the insurance contract. St. Germain has provided Scottsdale with sufficient notice as to the

---

[14]The "Loss Payment" provision of St. Germain's insurance contract provides in pertinent part that:
    a.  In the event of loss or damage covered by [the insurance contract], at [Scottsdale's] option, [Scottsdale] will either:
        (1) Pay the value of lost or damaged property;
        (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
        (3) Take all or any part of the property at an agreed or appraised value; or
        (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.
  [Scottsdale] will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this [insurance contract] or any applicable provision which amends or supersedes the Valuation Condition.
    b.  The cost to repair, rebuild, or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

[15]Id. paras. 11; 16. According to St. Germain, Scottsdale determined that St. Germain was entitled to 10% general contractor overhead and 10% profit, which determination St. Germain alleges is undervalued. St. Germain alleges that the overhead and profit is undervalued because the total amount that Scottsdale paid to St. Germain was inadequate to meet the reasonable repair or replacement costs of the covered property that was damaged or destroyed. Id. paras. 20; 26-30.

[16]Id. para. 17.

[17]Id. paras. 11-20; see also Rec. Doc. No. 3-4, p. 2, § 4"Loss Payment."

nature and the basis of St. Germain's claims against Scottsdale.[18]

Accordingly,

**IT IS ORDERED** that Scottsdale's motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Scottsdale's motion to strike class allegations is **DENIED**.  The Court shall determine the sufficiency of St. Germain's class allegations following the filing of St. Germain's motion for class certification.[19]

New Orleans, Louisiana, December ___10th___, 2007.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[18]Scottsdale "should be familiar enough with its own insurance policy to have sufficient notice of the provisions affecting replacement costs and/or actual cash value." *Nguyen*, 2007 WL 3275133, at *5.
   While St. Germain does not state the *specific* amount of his own overhead and profit, St. Germain does claim that he is entitled to receive a "reasonable" amount of overhead and profit, which reasonable amount Scottsdale failed to provide.  What is "reasonable" is not appropriate for determination at the pleadings stage.

[19]Rec. Doc. No. 35.